UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENAIDA MACIAS PENA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:21-cv-00301-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance and supplemental security benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff argues as follows: (1) "The ALJ committed harmful error in failing to defer to the multiple well-supported RFC limitations of the long-term, treating, specialist neurologist and psychiatrist Dr. Hylton, absent 'specific and legitimate' reasons"; and (2) "The ALJ failed to provide 'clear and convincing' reasons to reject symptomology." (ECF No. 19, p. 2). Having

reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. Dr. Hylton's Opinion

Plaintiff argues that the ALJ did not properly evaluate the severity of mental impairments because the ALJ failed to provide legally sufficient reasoning for discounting the opinions of treating neurologist Dr. Diana Hylton.[1] (ECF No. 19, p. 3). The Ninth Circuit has held the following regarding such opinion testimony:

> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[2] "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

---

[1] Plaintiff states that Dr. Hylton is also a psychiatrist, which Defendant disputes. (ECF No. 19, p. 3; ECF No. 21, pp. 5, 8). Generally, this dispute implicates Dr. Hylton's qualifications to opine on limitations stemming from Plaintiff's psychological impairments. However, the Court need not resolve this issue because, even assuming that Dr. Hylton is a psychiatrist, the Court finds no error in the ALJ's discounting of Dr. Hylton's opinions.

[2] As Plaintiff's correctly notes, because Plaintiff filed her applications for benefits in June 2016 (*i.e.*, before March 27, 2017), 20 C.F.R. § 404.1527 and § 416.927 apply in considering the weight given to Dr. Hylton's opinions. (ECF No. 26, p. 2); (*see* A.R. 25, 35). The new regulations for applications filed on or after March 27, 2017, 20 C.F.R. § 404.1520c and § 416.920c, do not apply in this case.

Here, the ALJ explained the reasons for giving Dr. Hylton's opinions less weight as follows:

> Treating neurologist Diana Hylton, M.D. opined (on an unspecified date) that since November 2014, the claimant was unable to work due to fibromyalgia, seizures, and degenerative disc and joint disease of the spine (Exhibit 4F). She reported that the claimant had chronic pain, focal seizures, fatigue, stiffness, daily headaches, sweaty palms, total body pain, neck pain, arm pain, and lower back pain. She had 12 tender points. She had normal sensation and normal left ankle reflexes. She had a positive straight leg-raising test at 90 degrees in the supine position. Her medications caused drowsiness. She had depression and anxiety that contributed to her symptoms and functional limitations. She could walk one city block without rest or severe pain. She could lift and carry 10 pounds rarely, stand or walk for less than two hours, and sit for less than two hours in an eight-hour day. She required the ability to shift at will from sitting, standing, and walking. She required unscheduled breaks. She had to elevate her legs with prolonged sitting. She could rarely twist, stoop, crouch, climb stairs, and climb ladders. She had significant limitations with reaching, handling, and fingering. She was likely to be off task 25% or more of a workday. She was incapable of even low stress work. She was likely to be absent from work about four days per month. Due to headaches and seizures, she should avoid noise and hazardous occupations (Exhibit 4F). This opinion was given less weight because it was inconsistent with the medical record, which showed normal physical examinations and stable impairments under medical management. The claimant's fibromyalgia was stable on Lyrica, and the claimant testified that her seizures were stable on Keppra. This opinion was also inconsistent with State agency opinion, and the overall evidence, including the claimant's daily activities, as discussed above.
>
> On December 1, 2016, treating neurologist Dr. Hylton opined that the claimant was unable to work due to fibromyalgia, depression, generalized body pain, and chronic fatigue (Exhibit 16F). She reported that the claimant had chronic back pain, knee pain, ankle pain, and multiple tender points. Lyrica caused drowsiness. She had depression and anxiety that contributed to her symptoms and functional limitations. She could walk ½ city block without rest or severe pain. She could lift and carry 10 pounds rarely, stand or walk for two hours, and sit for two hours in an eight-hour day. She required the ability to shift at will from sitting, standing, and walking. She required unscheduled breaks. She could rarely twist, stoop, crouch, climb stairs, and climb ladders. She had significant limitations with reaching, handling, and fingering (10% of the day). She was likely to be off task 25% or more of a workday. She was incapable of even low stress work. She was likely to be absent from work about four or more days per month. She was precluded from performance for 10% of a workday in the ability to deal with normal work stress and deal with the stress of semiskilled and skilled work (Exhibit 16F). This opinion was given less weight because it was inconsistent with the medical record, which showed normal physical examinations and stable impairments under medical management. The claimant's fibromyalgia was stable on Lyrica, and the

> claimant testified that her seizures were stable on Keppra. This opinion was also inconsistent with State agency opinion, and the overall evidence, including the claimant's daily activities, as discussed above.

(A.R. 40-41).

The first reason the ALJ gave to discount Dr. Hylton's opinions is that they were inconsistent with the medical record that showed normal physical exams and stable impairments with treatment. Inconsistencies between the medical record and a treating physician's opinions "may constitute an adequate reason to discredit the opinions of [the] treating physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Notably, elsewhere in the opinion, the ALJ cited multiple treatment records reporting normal findings from medical exams. (A.R. 37 – citing A.R. 429 (Plaintiff had intact sensation and 5/5 strength in her upper and lower extremities)); (A.R. 39 – citing A.R. 1291 (Plaintiff had normal results from right shoulder x-ray)); (A.R. 39 – citing A.R. 1262 (Plaintiff was in no apparent distress, appeared healthy, and ambulated normally)). Moreover, as the ALJ noted, the record showed that Plaintiff's conditions were managed with treatment. (A.R. 29 – citing 1096 (Plaintiff was "doing well")); (A.R. 64 (Plaintiff's testimony agreeing that her medication was helping her a lot)); (A.R. 74 (Plaintiff's testimony agreeing that her seizures were under control with medication)). While Plaintiff points to some records of abnormal findings, this, at most, amounts to another rational interpretation of the evidence, which is not sufficient to conclude that the ALJ erred.[3] *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."); (*see* ECF No. 19, p. 6).

The next reason given to discount Dr. Hylton's opinions is that they were inconsistent with State agency opinion and Plaintiff's daily activities. Notably, elsewhere in the opinion, the ALJ gave substantial weight to consultative psychologist Jeanne Card, who evaluated Plaintiff

---

[3] Plaintiff also asserts that some of Plaintiff's impairments, notably the physical impairments stemming from her seizures, were somatic in nature (*i.e.*, characterized by physical symptoms that cannot be fully explained) and the ALJ erred by failing to consider that such symptoms may not be accounted for by objective medical evidence. (ECF No. 19, p. 7). However, the ALJ explicitly recognized Plaintiff's diagnosis of psychogenic non-epileptic spells as part of a combination of severe impairments. (A.R. 28). And, as explained in this order, the ALJ properly discounted the degree of limitations claimed by Dr. Hylton and Plaintiff concerning this condition, *e.g.*, by noting that Plaintiff herself considered her seizures to be controlled with medication. (A.R. 40, 74).

twice and concluded that Plaintiff "was able to perform simple and repetitive tasks on a consistent basis and handle her personal affairs, including finances, in her own best interest[;] [s]he was able to interact and relate with supervisors, coworkers, and the public[;] [s]he was able to handle routine stressors at this time[;] [s]he was only mildly impaired in the ability to perform detailed and complex tasks; and work with coworkers, supervisors, and the public on a consistent basis without special or additional instruction." (A.R. 32 – citing A.R. 1116). Further, the ALJ gave significant weight to the opinions of psychiatrist H. Amado and psychologist S. Adamo, who generally opined that Plaintiff had non-severe mental impairments. (A.R. 33 – citing A.R. 113, 142). Based on the record as a whole, the ALJ rationally concluded that the opinions of Card, Amado, and Adamo were more consistent with the medical records, examination findings, and other record evidence, and reasonably relied on the opinions to conclude that Plaintiff had the residual functional capacity to perform medium work with some limitations. (A.R. 34).

Lastly, as to Plaintiff's daily activities, elsewhere in the opinion the ALJ noted that Plaintiff attended her children's school events, took them to the "nickel arcade," helped them with homework, and had a driver's license and operated a vehicle. (A.R. 35). While such activities do not necessarily suggest a high level of ability, they rationally support the ALJ's conclusion that Plaintiff is more capable that the significant limitations opined by Dr. Hylton. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that "a conflict [between a claimant's daily activities and a treating provider's opinion' may justify rejecting a treating provider's opinion").

In summary, the Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Hylton's opinions.

### B. Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints. (ECF No. 19, p. 14).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to

discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 36). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints and the reasons for discounting them as follows:

> The claimant testified at a hearing held on September 19, 2018. The claimant testified that she had seven surgeries on her right leg and four surgeries on her left leg due to varicose veins. She lived with three children aged 15, 14, and 12-years-old. She had two girls and a boy. She went to their school events. She had a driver's license and drove a vehicle. She did not spend time with family and friends. She talked on the telephone. She helped her children with homework when they needed. She suffered from mental illness depending on the day. She took medication and saw a clinician. Her medications were effective. She did not have any family to help her with her children. She shared meals with her children. She took them to their father's home that was 1 ¾ hours away. For fun, she watched her children play sports or she went to the nickel arcade. She had issues going to her children's events because she was afraid of dogs. She was unable to go if she was sick, had a headache, was sore, or she was having a flare-up. This happened three times a week. It could last all day or for 10 minutes. She had pain all over. She could feel it in her neck, back, and legs. When this happened, she laid down. She alleged that on an average day, she rested for four hours. She had headaches that sometimes would be on the left side of her head. She took a hot shower to calm her nerves. She had difficulty with noise, sound, and light. She wore sunglasses. Brightness or smells triggered her migraine headaches. She was unable to talk to other people. She had trouble with people when she had seizures from 2012 to 2013. She had those for a year. She was restarted on anti-seizure medication for the past year because she had feelings she was going to get a seizure. She had warning before her seizures. She would sit down. These

> psychogenic seizure were under control with her medication. She was taking two medications, Lyrica and Keppra, for her impairments.
>
> After careful consideration of the evidence, the undersigned found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms were not fully supported for the reasons explained in this decision.
>
> To start, the undersigned considered the claimant's allegations regarding her activities of daily living. Although she described daily activities that were fairly limited, two factors weighed against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities could not be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities were truly as limited as alleged, it was difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities were considered outweighed by the other factors discussed in this decision.

(A.R. 35-36). Following this summary, the ALJ also noted that Plaintiff's allegations "were inconsistent with the medical record," thereafter summarizing Plaintiff's medical treatment and highlighting reasons the medical record did not support Plaintiff's allegations, such as the lack of objective findings and Plaintiff's conservative treatment history. (A.R. 36, 39-40).

Inconsistencies with the medical record and a lack of support from the medical record are sufficient bases to discount a Plaintiff's subjective testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence was a basis to discount a plaintiff's credibility); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). First, as the ALJ noted, the medical record did not contain objective medical findings supporting limitations to the degree that Plaintiff alleged but was instead "wholly consistent with an ability to sustain medium work activity with [certain] limitations." (A.R. 39). As discussed in connection with Plaintiff's first issue, elsewhere in the opinion the ALJ relied on medical records showing normal examination findings and State agency medical opinions to conclude that Plaintiff was

capable of medium work, which likewise contradicts Plaintiff's assertion that she is disabled. Moreover, Plaintiff received conservative treatment with the "use of medications [that] did not suggest the presence of an impairment that was more limiting than found in [the ALJ's] decision." (A.R. 39-40). And, as discussed, Plaintiff testified that her medications (at least in part) helped or controlled her symptoms. (A.R. 64, 74), *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Accordingly, the Court concludes that the ALJ provided legally sufficient reasons for not giving full weight to Plaintiff's subjective complaints.

## II. CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of Social Security is hereby affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **September 14, 2022**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE